IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHELLE MARIE DELAPLAIN,   No. 2:15-cv-02439-HZ

        Plaintiff,   OPINION & ORDER

  v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Tim Wilborn
Wilborn Law Office, P.C.
P.O. Box 370578
Las Vegas, NV 89137

    Attorney for Plaintiff

Janice E. Hebert
Assistant United States Attorney
U.S. Attorney's Office, District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

1 - OPINION & ORDER

Sarah Moum
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Michelle Delaplain brings this action for judicial review of the Commissioner's final decision denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act and Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c) (3)). The Commissioner's decision is affirmed.

## PROCEDURAL BACKGROUND

Plaintiff applied for SSI and DIB on May 17, 2011, alleging an onset date of February 20, 2008. Tr. 196-204.[1] Her application was denied initially and on reconsideration. Tr. 76, 110. On April 14, 2014, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 32-53. On April 16, 2014, the ALJ found Plaintiff not disabled. Tr. 26. The Appeals Council denied review. Tr. 1-6.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on fibromyalgia, pain, degenerative arthritis, anxiety, and depression. Tr. 38, 221. Plaintiff was 40 years old at the time of the administrative hearing. Tr. 37. Plaintiff completed the eleventh grade and has previous work experience as a customer service representative, an insurance agent, a receptionist, and an auto parts clerk. Tr. 49.

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 12.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *See, e.g., Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert,* 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. 137 at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at

141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since February 20, 2008, the alleged onset date. Tr. 18. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, fibromyalgia, obesity, anxiety, status post left carpal tunnel release, lateral epicondylitis of the right elbow, and a rotator cuff syndrome of the left shoulder. Tr. 19. However, the ALJ determined that Plaintiff's impairments do not meet or medically equal the severity of a listed impairment. *Id.* At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), "except she is further limited to no more than frequent grasping, handling, and fingering on the left, and to no more than occasional overhead reaching bilaterally." Tr. 20. "She is also limited to simple, repetitive, routine tasks requiring no more than occasional interaction with supervisors, co-workers, and the general public." *Id.* The ALJ concluded that Plaintiff is unable to perform any past relevant work. Tr. 25. However, at step five the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as electronics worker, assembler of electrical accessories, and basket filler. Tr. 26. Thus, the ALJ concluded that Plaintiff is not disabled. *Id.*

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the

record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*; *see also Batson*, 359 F.3d at 1193. However, the court cannot not rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

## DISCUSSION

Plaintiff contends that the ALJ erred by (1) concluding that Plaintiff's impairments do not equal any of the listed impairments; (2) discounting the opinion of treating physician Dr. Tyne; (3) discounting Plaintiff's testimony; and (4) discounting the testimony of lay witness Ms. Hoagland. According to Plaintiff, the ALJ's errors render the ALJ's residual functional capacity (RFC) assessment and hypothetical posed to the Vocational Expert (VE) invalid.

The Court affirms the ALJ's decision to discount the opinion of Dr. Tyne and the testimony of Plaintiff and Ms. Hoagland. Thus, Plaintiff's argument that the combination of her impairments meets two listed impairments fails. Similarly, there is no need for this Court to

reach Plaintiff's arguments regarding the RFC and the hypothetical posed to the VE, because there is no indication that the ALJ erred in his determination of Plaintiff's impairments and limitations. In short, Plaintiff's arguments fail.

**I.      Listed Impairments**

Plaintiff contends that the ALJ erred in concluding, at step three, that her combination of impairments does not medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. According to Plaintiff, the ALJ erred because Plaintiff's fibromyalgia, in combination with Plaintiff's other impairments, equals Listing 14.09D, inflammatory arthritis; and the mental impairment listing for anxiety disorders, Listing 12.06.

The claimant has the initial burden of proving that an impairment meets or equals a Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530–33 (1990). At step three of the sequential evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal those in the Listings. *See* § 404.1520(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The List describes the characteristics of each impairment. The description includes the "symptoms, signs and laboratory findings" that make up the characteristics of each listed impairment. 20 C.F.R. § 404.1525. To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. *Tackett*, 180 F.3d at 1099. Listed impairments are those that are "so severe that they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1995).

An ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th

6 - OPINION & ORDER

Cir. 2001). "A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Id.* The ALJ need not, however, "state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding that ALJ did not err in failing to state what evidence supported conclusion that claimant's impairments did not satisfy Listing). An ALJ's decision that a plaintiff did not meet a Listing must be upheld if it was supported by "substantial evidence." *See Warre v. Comm'r of Soc. Sec. Admin.,* 439 F.3d 1001, 1006 (9th Cir. 2006).

Plaintiff's argument depends upon a finding that the ALJ erred in discounting the opinions and testimony given by Plaintiff, her friend, Crystal Hoagland; and her treating physician, Dr. Tyne. *See* Pl.'s Br. 14-15. Plaintiff contends that the opinions and testimony support a degree of limitation that, when combined with evidence of fibromyalgia and Plaintiff's other impairments, is medically equivalent to Listings 14.09D and 12.06.

However, as discussed below, this Court affirms the ALJ's decision to discount the weight assigned to the testimony of Plaintiff and Ms. Hoagland, and the opinion of Dr. Tyne. In light of that affirmance, Plaintiff is left with "no theory, plausible or otherwise" or evidence as to how her combined impairments equaled a listed impairment. *See Lewis*, 236 F.3d at 514 (holding that the ALJ's failure to consider equivalence was not reversible error because the claimant did not offer any theory, plausible or otherwise, as to how his impairments combined to equal a listing impairment); *see also Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence."). The ALJ's failure to consider Plaintiff's impairments collectively is not

7 - OPINION & ORDER

error when Plaintiff did not set forth any evidence to support the diagnosis and finding of a listed impairment. *Burch,* 400 F. 3d at 683.

## II.     Treating Physician Dr. Tyne

Plaintiff argues that the ALJ erred by rejecting treating provider Dr. Kari Tyne's opinion. There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. *Lester*, 81 F.3d at 830. The medical opinion of a claimant's treating physician is entitled to "special weight" because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989) (citation omitted). The ALJ may reject the uncontradicted opinion of a treating or examining physician by providing clear and convincing reasons supported by substantial evidence in the record. *See Lester,* 81 F.3d at 830-31; *Andrews*, 53 F.3d at 1043.

If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Barnhart*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). Further, an ALJ may reject a physician's opinion if it conflicts with the physician's other findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Although the contrary opinion of a non-treating medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record. *Magallanes*, 881 F.2d at 752.

Dr. Tyne began treating Plaintiff on May 31, 2012. Tr. 458. Plaintiff had sought out a new primary care provider because she did not feel she was getting the proper treatment for her fibromyalgia. *Id.* Dr. Tyne's treatment notes from Plaintiff's initial visit state that Plaintiff's biggest concern was tingling in both of her arms, from her shoulders down, and that she did not have pain or numbness. *Id.*[2]

Less than a month later, in June of 2012, Dr. Tyne filled out a one-page "Functional Capacity Questionnaire," in which she listed Plaintiff's impairments as fibromyalgia and lumbosacral spondylosis. Tr. 536. When asked about Plaintiff's ability to sit, stand, and walk in an eight-hour workday, Dr. Tyne opined that Plaintiff could only do each activity for "0-2" hours. *Id.* Dr. Tyne indicated that Plaintiff could occasionally lift less than 10 pounds, rarely lift 10 pounds, and never lift 20 pounds or more. *Id.* Dr. Tyne checked "Frequently," when asked how often during a typical workday would Plaintiff's experience of pain be severe enough to interfere with attention and concentration needed to perform simple work tasks. *Id.* Dr. Tyne identified Plaintiff as having the following "signs and symptoms": impaired sleep, depression, and muscle weakness. *Id.* Finally, Dr. Tyne stated that she anticipated Plaintiff's impairments or treatment would cause her to be absent from work more than four days per month. *Id.*

In November of 2012, Dr. Tyne wrote a letter supporting the need for Plaintiff to have a "live in caregiver." Tr. 731. Dr. Tyne wrote that Plaintiff was "unable to bath[e], clean, prepare healthy meals, pay for bills, and take care of other general household responsibilities without assistance[.]" *Id.*

The ALJ provided three reasons to give "little weight" to Dr. Tyne's opinions: (1) the June 2012 opinion was submitted as a pre-printed form and was unaccompanied by any medical

---

[2] As Plaintiff notes, the record may be incomplete because it appears that Dr. Tyne's treatment note may have continued on to another page. *See* Pl. Reply 10; Tr. 458.

9 - OPINION & ORDER

rationale; (2) her opinions conflicted with Plaintiff's daily activities; and (3) her opinions conflicted with more recent treatment notes. The ALJ's reasons are specific and legitimate, and they are supported by substantial evidence.[3] *See Barnhart*, 427 F.3d at 1216. Thus, the Court affirms that ALJ's decision to discount the weight given to Dr. Tyne's opinions.

    A.   June 2012 Opinion

Unlike the opinions in the Ninth Circuit case cited by Plaintiff, *Garrison v. Colvin,* Dr. Tyne's opinion was given after less than a month of treatment and is unsupported by any treatment notes. *See Garrison v. Colvin*, 759 F. 3d 995, 1013 (9th Cir. 2014) (explaining that a check-box form may be entitled to weight if it is supported by medical records); *see also Molina v. Astrue,* 674 F. 3d 1104, 1111 (9th Cir. 2012) (affirming decision to reject check-off reports that do not contain any explanation of the bases of their conclusions); *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) ("It would be exceedingly illogical to credit a doctor's opinion because he is more likely to have a detailed and longitudinal view of the claimant's impairments when in fact, there is no detail or longitudinal view.")(emphasis removed). Thus, the ALJ reasonably discounted Dr. Tyne's June 2012 opinion.

    B.  Activities of Daily Living

Inconsistencies between a doctor's opinion and a claimant's activities of daily living may constitute substantial evidence to discount the doctor's opinion. *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 601–02 (9th Cir.1999) (ALJ permissibly rejected treating physician's opinion when it conflicted with plaintiff's activities); *see also Fisher v. Astrue,* 429 F. App'x.

---

[3] Because Dr. Tyne's assessed limitations are contradicted by the other five medical opinions in the record, the ALJ was only required to provide specific and legitimate reasons. *See* Tr. 72-73, 104-05, 106-07, 443-44, 452.

10 - OPINION & ORDER

649, 652 (9th Cir. 2011) (conflict between doctor's opinion and claimant's daily activities was specific and legitimate reason to discount opinion).

However, here, the ALJ erroneously found that Dr. Tyne's opinions were inconsistent with Plaintiff's reported activities of daily living. This case is unlike *Rollins v. Massanari,* 261 F.3d 853 (9th Cir. 2001), which Defendant cites in support of its arguments. In *Rollins*, the Court upheld the ALJ's decision to discount a doctor's opinion because the doctor's "restrictions appear to be inconsistent with the level of activity that [plaintiff] engaged in by maintaining a household and raising two young children, with no significant assistance from her ex husband." 261 F. 3d at 856. Here, the ALJ cited the following daily activities: light household chores, working with horses[4], caring for her young daughter, going on occasional shopping trips, occasionally using a computer, spending time with her boyfriend, and watching television or movies. The Court agrees with Plaintiff that none of these activities contradict Dr. Tyne's opinion regarding Plaintiff's ability to lift, sit, stand, concentrate, or work.

    C.  Treatment Notes

The ALJ found that Dr. Tyne's opinions were inconsistent with her own treatment notes and the notes of examining physician Marc Wagner, M.D. "A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician[.]" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014).

The ALJ points to treatment notes that indicate that Plaintiff exhibits full range of motion and normal motor strength. Tr. 686-87. The ALJ also notes that, as of March 2013, Plaintiff demonstrated "pain-free motion of the major joints" and a "steady and nonantalgic gait." Tr. 539. Furthermore, Dr. Wagner "rated [Plaintiff's] overall motor strength at 5/5—even in the

---

[4] Plaintiff testified that she has her mother's horse at her home. Tr. 42. According to Plaintiff, her daughter is the primary person who takes care of the horse. *Id.*

11 - OPINION & ORDER

lumbosacral myotomes" and "[t]here were not reported deficits in[Plaintiff's] sensation or reflexes." Tr. 24 (quoting Tr. 539).

Plaintiff argues that the ALJ had a pervasive misunderstanding of fibromyalgia and incorrectly demanded objective evidence to support Plaintiff's allegations of pain. However, Plaintiff's argument and the cases she cites focus whether the ALJ erred in discounting Plaintiff's testimony, as opposed to Dr. Tyne's opinion.

Plaintiff's citation to *Benecke v. Barnhart*, 379 F. 3d 587 (9th Cir. 2004) is also inapposite. In *Benecke,* the Ninth Circuit found that "the ALJ erred in discounting the opinions of Benecke's treating physicians, relying on his disbelief of Benecke's symptom testimony as well as his misunderstanding of fibromyalgia." *Id.* at 594. The ALJ erred by "effectively requir[ing] 'objective' evidence for a disease that eludes such measurement." *Id.* Here, unlike in *Benecke*, the ALJ discounted Dr. Tyne's opinion, not because it lacked objective evidence to support a diagnosis of fibromyalgia, but because Dr. Tyne's assessed restrictions contradicted her own treatment notes and the notes of Dr. Wagner. This is a proper reason to discount Dr. Tyne's opinion.

While the ALJ erred in his discussion of Plaintiff's daily activities, he nevertheless provides specific and legitimate reasons, supported by substantial evidence, to discount Dr. Tyne's opinion. Thus, the Court upholds the ALJ's decision. *See Rollins*, 261 F.3d at 857 (upholding ALJ's "reasonable interpretation" as long as it is supported by substantial evidence because it is not the Court's "role to second-guess it").

### III.     Plaintiff's Credibility

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting her testimony about her impairments and their limiting effects. In assessing the

credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. 20 C.F.R. § 404.1529. First, the ALJ determines whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). If such evidence exists, and barring affirmative evidence of malingering, the ALJ must give clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Id.* at 1284; *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 492–93 (9th Cir. 2015). If the record contains affirmative evidence of malingering, the ALJ need only provide specific and legitimate reasons for an adverse credibility finding. *Morgan v. Comm'r*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ may consider many factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Tommasetti*, 533 F.3d at 1035. In addition, conflicts between a claimant's testimony and the objective medical evidence in the record can undermine a claimant's credibility. *Morgan*, 169 F.3d at 600. Where the ALJ's credibility findings are supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). However, a general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Morgan*, 169 F.3d at 599.

Plaintiff testified that she last worked full-time in February of 2008. Tr. 38. After that time, she tried to work from home as an insurance agent, but she was unable due to her lower back pain and fibromyalgia. *Id.* In February of 2009, Plaintiff lost her job after missing many days due to pain and additional days due to her pony's illness. *Id.* at 39.

In 2011, Plaintiff tried again to work as an insurance agent. Tr. 40. However, her anxiety due to dealing with multi-line phones, her pain, and the side effects of her medication made it impossible to continue working. *Id.* Since then, Plaintiff has not worked. *Id.*

Plaintiff testified that she "hurt[s] constantly . . . even with [her] medications." Tr. 41. The medications make Plaintiff drowsy and she cannot sit for very long. *Id.* Plaintiff lies down a lot and uses a heating pad every morning. *Id.* According to Plaintiff, "[m]y doctor told me that we are at a stalemate with my medications. There is nothing else that she can do." *Id.*

Plaintiff lives at home with a live-in caregiver and her nine year old daughter. Tr. 42. Her boyfriend does not live with her. *Id.* Plaintiff's daughter is the person who primarily cares for the horse they have at the house. *Id.* Plaintiff does not drive, nor is she involved with her daughter's school activities. *Id.* Plaintiff states that she does not "go anywhere," including church. Tr. 44. She only goes out of the house about once a month to go shopping. Tr. 45. Plaintiff testified that her anxiety keeps her from going anywhere. *Id.*

Plaintiff's caregiver and daughter take care of the upkeep of the house, chores, laundry, and meal preparation. Tr. 43. Plaintiff's boyfriend takes care of the house's landscaping. *Id.* Occasionally, Plaintiff reads a book; however, her carpal tunnel makes her arms go to sleep. Tr. 45. While Plaintiff's carpal tunnel surgery helped with pain, she still has pain in her arms. *Id.*

The ALJ found Plaintiff's testimony "not entirely credible" for the following reasons: (1) medical evidence from prior to Plaintiff's alleged onset date does not suggest a disability and

medical records contemporaneous to the onset date do not reveal any sudden decline in Plaintiff's health; (2) the objective medical evidence is not consistent with a disabling pain condition; (3) Plaintiff had dealt with back symptoms for years in which her earnings had demonstrated substantial gainful activity; (4) and Plaintiff provided questionable effort in her examination with Dr. Henderson, which raises suspicion of secondary gain. The Court affirms the ALJ's finding.

    A.  Medical Evidence From the Time of Plaintiff's Alleged Onset Date

Plaintiff's alleged onset date is February 20, 2008. Tr. 16. The ALJ noted that, prior to this date, the medical records provide evidence of Plaintiff's mental health symptoms. Tr. 22. However, apart from the mental health symptoms, Plaintiff described her health as "very good." Tr. 301. In June of 2008, Plaintiff fell off her horse and suffered a right heel injury; however, "there is no record of any lingering problems with mobility." Tr. 22. The ALJ found that Plaintiff's ability to mount and ride a horse suggested she did not have a debilitating pain condition. Tr. 22. The record does not appear to have treatment notes from 2009.

Plaintiff does not challenge this reason that the ALJ provided to discount her testimony. The Court agrees with the ALJ that the lack of medical evidence during the time surrounding Plaintiff's alleged onset date, as well as a lack of any indication that Plaintiff's conditions changed after the onset date, is a valid reason to discount her testimony.

    B.  Objective Medical Evidence

The ALJ further discounted Plaintiff's testimony because the objective medical evidence is not consistent with a disabling pain condition. The ALJ noted the following from Plaintiff's treatment notes: normal motor strength in all extremities, negative straight-leg raise testing, no evidence of spinal stenosis or nerve root impingement, ability to walk on heels and toes without

15 - OPINION & ORDER

distress, mildly decreased lateral flexion at the waist, and negative imaging of the shoulders. Tr. 22, 23.

Plaintiff points to *Benecke v. Barnhart*, 379 F.3d 587, 596 (9th Cir. 2004), for the proposition that it is error to require objective evidence of fibromyalgia, because it is a disease that "eludes such measurement." As the Ninth Circuit has explained, fibromyalgia "is poorly-understood within much of the medical community," it is "diagnosed entirely on the basis of patients' reports of pain and other symptoms," and "there are no laboratory tests to confirm the diagnosis." *Benecke*, 379 F.3d at 590; *see also Rounds v. Comm'r*, 807 F.3d 996, 1000 n.3 (9th Cir. 2015).

In a recent unpublished decision, the Ninth Circuit confirmed that an ALJ errs by discounting a claimant's "'subjective complaints and limitations' [due to fibromyalgia] as 'simply out of proportion to and not corroborated by the objective medical evidence.'" *Hamilton-Carneal v. Colvin*, No. 14-15398, 2016 WL 6648694, at *1 (9th Cir. Nov. 10, 2016). Here, however, the ALJ provided several valid reasons for discounting Plaintiff's testimony. Unlike *Hamilton-Carneal*, the absence of objective medical evidence was not the central factor in the ALJ's credibility determination. Therefore, even if the ALJ erred as to this reason for discounting Plaintiff's testimony, such error was not harmful.

### C.  Long-Standing Symptoms

The ALJ noted that Plaintiff had dealt with her same complained-of "back symptoms" during periods in which her earnings had demonstrated substantial gainful activity (SGA). Tr. 23. According to the ALJ, this suggested that Plaintiff's impairments did not necessarily preclude full-time employment. *Id.*

An ALJ may discount a claimant's testimony if there is substantial evidence to support the conclusion that the claimant was capable of working with the same impairment prior to filing for benefits. *See Gregory v. Bowen*, 844 F.2d 664, 667 (9th Cir. 1988) (noting that "substantial evidence" indicated that the claimant's condition "had remained constant for a number of years and that her back problems had not prevented her from working over that time."); *see also Wikoff v. Astrue*, 388 F. App'x 735, 737 (9th Cir. 2010) (upholding ALJ's conclusion that claimant was able to perform substantial gainful activities while suffering mental impairments as severe as those she suffered later, after her alleged onset date).

Plaintiff reported to her doctor on July 12, 2011 that she had an eight-year history of lower back pain and generalized muscle pain. Tr. 309. The ALJ wrote: "Notably, the claimant reported that she had dealt with these symptoms for several years, which *presumably* included periods in which her earnings demonstrated substantial gainful activity." Tr. 23 (emphasis added).

Plaintiff does not dispute that she had income at SGA-levels during the prior eight-year period. Instead, Plaintiff challenges the ALJ's use of the word "presumably" in the ALJ's decision. Plaintiff's argument that the ALJ should not have made such a presumption fails because the record demonstrates that Plaintiff did, in fact, engage in SGA during the periods at issue. *See* Tr. 23, 205, 309. The ALJ reasonably drew inferences from the record regarding Plaintiff's back problems and her ability to earn SGA prior to filing for disability. *See Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir.2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's

decision." (citation omitted)). Therefore, the Court affirms this reason to discount Plaintiff's testimony.

    D.  Secondary Gain

The ALJ further discounted Plaintiff's testimony because the notes of consultative physician Michael Henderson, D.O., regarding Plaintiff's "questionable effort" during testing raised "suspicion of secondary gain." Tr. 23. Plaintiff argues that the suspicion of secondary gain motivation does not, alone, constitute substantial evidence supporting the ALJ's findings.

Dr. Henderson wrote in his chart notes that Plaintiff's "effort did not seem full" when testing knee flexion and extension. Tr. 443. Furthermore, Plaintiff's symptoms were "nonanatomic for back pain" and "there did not seem to be full effort." Tr. 443. The ALJ found that such observations undermined the credibility of Plaintiff's subjective pain complaints. Tr. 23.

Plaintiff argues that the ALJ's finding improperly uses objective evidence to undermine Plaintiff's allegations. The Court fails to find support for this argument. Instead, the ALJ uses evidence of Plaintiff's questionable effort, not the objective test results, to discount her credibility. Such analysis is permissible. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (discounting credibility of claimant who failed to give maximum or consistent effort during physical capacity evaluations); *see also Corso v. Colvin*, No. 3:13-CV-250-AC, 2014 WL 950029, at *5 (D. Or. Mar. 11, 2014) (upholding ALJ's conclusion that the plaintiff's inconsistent effort on exams undermined his credibility).

Plaintiff also argues that a claimant's desire to obtain benefits may not be used to discredit her testimony, as that would result in no claimant ever being found credible. The Court agrees. However, the ALJ did not discount Plaintiff's testimony due to her desire to receive

benefits. Instead, the ALJ properly considered Dr. Henderson's assessment of Plaintiff's effort during the consultative exam. In sum, the ALJ properly considered Plaintiff's effort as a specific and legitimate reason to discount the weight awarded to her testimony.

## IV.     Lay Witness Testimony

Plaintiff argues that the ALJ erred by failing to fully credit the statements of Plaintiff's friend, Crystal Hoagland. "Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." *Molina*, 674 F.3d at 1114. The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine*, 574 F.3d at 694.

In a July 2011 Third Party Function Report, Ms. Hoagland stated that Plaintiff is unable to work because of her pain and mental health issues. Tr. 263. At that point, Ms. Hoagland had known Plaintiff for about a year and nine months. *Id.* As to Plaintiff's personal care, Ms. Hoagland opined that her fibromyalgia affects "anything she did," such as dressing, bathing, shaving, eating, and caring for her hair. Tr. 264. Ms. Hoagland stated that Plaintiff "doesn't go anywhere on a regular basis" and that fibromyalgia, anxiety, and depression causes issues in all aspects of her life. Tr. 268.

The ALJ gave Mr. Maerz's report only "partial weight." The ALJ wrote:

> [Ms. Hoagland's] assessment approximately coincides with health issues that ultimately led to the claimant's hysterectomy in August 2011. The claimant's physical functioning subsequently improved, to the point Dr. Henderson could not identify any significant functional limitations by March 2012. Accordingly, the undersigned gives only partial weight to Ms. Hoagland's observations, to the extent they are reasonably consistent with the medical and other evidence cited above.

Tr. 25.

The Court affirms the ALJ's decision to discount Ms. Hoagland's opinion to the extent it is inconsistent with medical evidence in the record, such as Dr. Henderson's opinion. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (rejecting portions of lay witness testimony as inconsistent with medical evidence). More importantly, even if the ALJ erred, such error was harmless. *See Molina*, 674 F.3d at 1115. Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, any error by the ALJ is inconsequential. *Id.* at 1117. Here, the reasons the ALJ discounted Plaintiff's testimony "apply equally well" to Ms. Hoagland's testimony.

**V.     RFC and VE Hypothetical**

Plaintiff argues that the ALJ's RFC finding and the hypothetical posed to the VE were erroneous because they failed to include limitations assessed by Dr. Tyne and supported by the testimony of Plaintiff and Ms. Hoagland. Because the Court affirms the ALJ's decision to discount such opinions and testimony, there is no error in the ALJ's RFC or hypothetical.

**CONCLUSION**

The Court affirms the Commissioner's decision.

IT IS SO ORDERED.

Dated this 17 day of March, 2017

_____
MARCO A. HERNÁNDEZ
United States District Judge

20 - OPINION & ORDER